UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------X

UNITED STATES OF AMERICA,

              - against -                      <u>MEMORANDUM & ORDER</u>
                                                03-CR-240 (NGG)

GEHABAE WORJLOH,

                    Defendant.

-------------------------------------------------------X

GARAUFIS, United States District Judge.

The defendant in this matter, Gehabae Worjloh ("Worjloh" or "Defendant"),[1] was convicted by jury verdict before this court of (1) conspiring to distribute and possess with intent to distribute crack cocaine; (2) distributing and possessing with intent to distribute crack cocaine; and (3) unlawful possession of a firearm. Currently before the court are Defendant's post-trial motions, seeking (1) a post-trial <u>Franks</u> hearing on the admissibility of certain evidence presented at trial; (2) a new trial based on claims of constructive amendment of the indictment; and (3) a new trial based on an alleged violation of the Sixth Amendment right to counsel.

For the reasons set forth below, the Defendant's motions are DENIED.

## I.    Background Facts Relevant to the Motions

On March 29, 2002, the New York City Police Department ("NYPD") executed a New York state search warrant issued on March 22, 2002 for a location known as 530 Hegeman Avenue, Brooklyn, New York. During the execution of the search and based on evidence obtained therefrom, the Defendant was arrested. His case was brought in New York State Supreme Court, Kings County, Indictment # 2087/2002.

---

[1] I note for the record that the Defendant's first name is also at times spelled "Geagbae."

On January 29, 2003, a federal search warrant was executed by the Drug Enforcement Agency ("DEA") at the same location, specifically Apartment 2F at 530 Hegeman Avenue. Again, evidence was recovered and Worjloh was arrested pursuant to a federal arrest warrant. The Defendant's indictment in the present case arises from this second arrest. At the time of the arrest, the Defendant's New York State Supreme Court case was still pending, but was ultimately dismissed in favor of prosecuting the federal charges.

## II.    Procedural History

Prior to trial, which commenced in April 2005, the Defendant submitted for the court's consideration several pre-trial motions.[2] Of relevance to the instant motions, the Defendant moved in limine for (1) the suppression of statements he made to federal agents following his January 29, 2003 arrest; and (2) the suppression of evidence procured from Worjloh's residence pursuant to the search warrant executed by the NYPD on March 29, 2002. In a Memorandum & Order dated October 14, 2004 ("10/14/04 M&O"), I considered and denied the Defendant's motions to suppress.[3] The Defendant filed a timely motion for reconsideration of my 10/14/04 M&O. In his motion for reconsideration, the Defendant challenged my decision not to suppress the contested evidence. The Defendant's motion for reconsideration was denied by M&O dated February 4, 2005 ("2/4/05 M&O").[4]

Post-trial, several submissions to the court have been made concerning the Defendant's

---

[2] The pre-trial motions that are not raised in the currently pending post-trial motions will not be addressed in this opinion.

[3] Familiarity with the 10/14/04 M&O is presumed.

[4] Familiarity with the 2/4/05 M&O is presumed.

conviction. On May 3, 2005, attorney Martin Goldberg, then counsel for the Defendant, submitted a Memorandum of Law requesting a post-trial <u>Franks</u> hearing, suppression of the fruits of the allegedly unlawful searches of the Defendant's residence, and the grant of a new trial.[5] Worjloh also submitted <u>pro se</u> to the court on June 7, 2005, a Rule 29 motion seeking a judgment of acquittal. Finally, on November 14, 2005, the Defendant's current CJA-appointed counsel, Sally Butler, submitted a Supplemental Memorandum of Law in Support of Defendant's Previously Submitted Post-Trial Motions ("Def. Supp. Mem."). Ms. Butler's Supplemental Memorandum incorporates the arguments of the two previously filed motions, and requests a post-trial <u>Franks</u> hearing, suppression of allegedly tainted evidence, and the grant of a new trial.

I will now consider the Defendant's post-trial motions.

## III. Defendant's Request for a Post-Trial <u>Franks</u> Hearing on the 2002 NYPD Search[6]

### <u>Pre-Trial Motion</u>

On March 29, 2002, the NYPD executed a search of Worjloh's residence at 530 Hegeman Avenue in Brooklyn pursuant to a search warrant issued one week earlier, on March 22, 2002, by Justice Francois Rivera of the Supreme Court of the State of New York. The warrant was issued based on the affidavit of NYPD Detective Hasan Jenkins ("Jenkins"). In his affidavit, Jenkins attested that the location was a "two-story brown brick building" and that a confidential informant had previously purchased crack cocaine from both the first and second floors of the residence.

---

[5] On June 7, 2005, the Defendant requested the removal of his then-counsel, Mr. Goldberg, and assignment of new counsel. At a status conference held on June 28, 2005, I relieved Martin Goldberg as counsel for the Defendant, and appointed Sally Butler, Esq. as new counsel pursuant to the Criminal Justice Act. (<u>See</u> Docket Entry # 118).

[6] The discussion in this section refers *without* citation to my two pre-trial decisions in this matter, the 10/14/04 M&O and 2/4/05 M&O.

Both Jenkins and the confidential informant were questioned by Justice Rivera about the basis for issuing the warrant. During this questioning, Detective Jenkins described 530 Hegeman Avenue as a "[t]wo-story attached one-family home" and indicated that from his observations he concluded that one family lived in the building. The confidential informant confirmed this information by telling Justice Rivera that 530 Hegeman was a "[o]ne-family brick house." As a result of the search, the NYPD seized numerous pieces of contraband, including drugs, drug paraphernalia and a 9mm handgun from the residence, and arrested the Defendant.

Before trial, Worjloh moved to suppress all evidence obtained as a result of the March 2002 search, arguing that the search was based on a defective warrant in that it did not account for the fact that the residence at 530 Hegeman Avenue was not a single family house but rather was subdivided into multiple apartments. Worjloh maintained that Justice Rivera had been misled and had been provided significant false information so that a warrant for the entire premises would be issued. Among other contentions, Worjloh argued that Jenkins falsely informed Justice Rivera that 530 Hegeman Avenue was an "attached" home with all windows facing the front. Pictures of the residence demonstrated that it was in fact an unattached home having windows on its sides. Worjloh also provided to the court at oral argument in support of his motion in limine a number of real estate records and a housing violation document indicating that 530 Hegeman Avenue is listed as containing multiple units. Additionally, Worjloh furnished an affidavit and an affirmation indicating that during 2002, 530 Hegeman Avenue served as the residence of individuals who were not members of his family.

In my 10/14/04 M&O, I considered the Defendant's challenge to the validity of the warrant issued by Justice Rivera and I denied Worjloh's motion for a Franks hearing. Under

Franks v. Delaware, a defendant may contest the validity of a warrant "where the defendant makes a *substantial* preliminary showing that a false statement knowingly or intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit." Franks, 438 U.S. 154, 155 (1978) (emphasis added). I held that a Franks hearing was not merited. Worjloh failed to establish that Jenkins either intentionally or recklessly incorrectly described the exterior of the house. As I explained in the M&O, based on the record, it seemed more likely that Detective Jenkins simply made a mistake in recounting the details of the house.

In the 10/14/04 M&O, I also determined that the allegedly false information presented by Jenkins to Justice Rivera was not necessary to establish probable cause for the warrant because the remainder of the affidavit, without that information, was sufficient to establish probable cause. See United States v. Canfield, 212 F.3d 713, 718 (2d Cir. 2000). Jenkins's affidavit contained information provided by the confidential informant, who indicated that he had recently purchased drugs at the house on two occasions. The confidential informant also testified that 530 Hegeman Avenue was a "[o]ne-family brick house." Further, the fact that the house did not contain separate residences and that it was used in its entirety by those selling drugs there was supported by the affidavit's indication that the confidential informant had purchased drugs from both the first and second floors.

As Detective Jenkins affirmed in his affidavit and also testified, he regarded the confidential informant as extremely reliable. The informant's information had resulted previously in several arrests and seizures of contraband. Thus, the warrant was not defective when issued because the alleged falsity related to information provided by a confidential informant that was reasonably relied on by the officer in his affidavit. See United States v.

Wapnick, 60 F.3d 948, 956 (2d Cir. 1995); United States v. Gonzalez, 835 F.2d 449, 451 (2d Cir. 1987).  Independent of Detective Jenkins's mischaracterization of the house's exterior, sufficient information was provided to establish probable cause for the issuance of a warrant to search 530 Hegeman Avenue.  See United States v. Travisano, 724 F.3d 341, 346 (2d Cir. 1983) ("To establish probable cause to search a residence, two factual showings are necessary – first, that a crime was committed, and second, that there is probable cause to believe that evidence of such crime is located at the residence.").

In the pre-trial stage, I also considered Worjloh's argument that even if the warrant was valid when issued, upon commencing the search, the NYPD should have realized that 530 Hegeman Avenue contained multiple residences and thus confined its search solely to Worjloh's apartment.  It is established that law enforcement officials must restrict searches to the residence of the suspect when it becomes clear that the search warrant covers multiple residences.  United States v. Kyles, 40 F.3d 519, 524 (2d Cir. 1994).  However, I found and held in the 10/14/04 M&O that the Defendant had failed to show that 530 Hegeman Avenue was physically configured in such a way as to provide notice to the NYPD that it contained separate residences.

Worjloh failed to produce any evidence of indicia, such as individual doorbells and mailboxes, that would have suggested multiple units.  See id.  Rather, Worjloh demonstrated only that the house was home to various individuals and that it was listed on real estate records as containing multiple units.  Moreover, I determined that the description of the house's interior provided by the NYPD officer who executed the search affirmed that although the house may have contained groupings of rooms, it did not appear to be made up of separate residences.  In the absence of a showing that the officers had reason to know that the house contained separate

residences, I held that the search conducted pursuant to the warrant was valid. Accordingly, I denied Worjloh's in limine motions for a Franks hearing and to suppress the evidence obtained through the NYPD's 2002 search.

The Defendant moved for reconsideration of my decision denying the Franks hearing and suppression of the evidence resulting from the 2002 search. The motion was denied on the grounds that Worjloh had submitted no new evidence on the issue. See generally 2/4/05 M&O. Although Worjloh claimed that a Franks hearing would provide him the opportunity to question Jenkins and to demonstrate that Jenkins' preliminary investigation of 530 Hegeman Avenue was insufficient and led to a presentation to Justice Rivera that was misleading and displayed a reckless disregard for the truth, I again denied the request for a hearing. Central to my holding was the fact that even had Worjloh been able to make such a showing with regard to the inadequacy of Jenkins' investigation, it would not have undermined the testimony of the confidential informant or Jenkins' reliance on the information provided by the informant. I further held that real estate records submitted by Worjloh in support of reconsideration, which listed the residence as a multiple dwelling, were not probative of whether Jenkins made reckless or misleading statements in applying for the warrant. I found that although Jenkins' perhaps should have been more thorough in his investigation of 530 Hegeman Avenue, his failure to do so was not reckless, but rather reasonable given his reliance on the informant.

In support of reconsideration, Worjloh again argued that the scope of the search was impermissible because once inside the residence, the officers should have realized that there were multiple dwellings. On this issue, I found that Worjloh failed to present sufficient evidence to warrant holding a hearing in that his basis for having the hearing rested only on speculation and

vague, second-hand information.  As I pointed out in the 2/4/05 M&O, during the course of the raid a number of individuals were arrested at the scene, and any of them could have supplied an affirmation regarding the events of the search.  However, no such information was provided. Worjloh offered second-hand information that one of his sisters, Lashondra Holmes, indicated that the doors to the apartments at 530 Hegeman Avenue have locks and that after one of the police searches she observed damage to the doors.  This information, however, did not address the specific conditions that the officers encountered when they arrived at the home to conduct the search as it does not indicate whether the doors were closed and locked on the day of the search, or whether they were routinely kept closed and locked.  I also found the information concerning damage to the doors unconvincing of the need for a hearing because there was no reason to assume such damage occurred as a result of that search.  Ultimately I held that although the Defendant's submissions and new arguments in support of reconsideration perhaps raised speculation about the search, Worjloh had nonetheless failed to provide the court with sufficiently detailed and factual information to justify holding an evidentiary hearing.  His motion for reconsideration was therefore denied.

Post-Trial Motion

_____(i)	*Validity of the Warrant*

In his post-trial motion now being considered, Worjloh for the third time argues that the 2002 NYPD search was invalid and that a post-trial Franks hearing is warranted.  I have discussed my previous decisions at length supra to demonstrate that this issue has been conscientiously considered by this court on two previous occasions.  I will now consider it for a third and final time, and in doing so I reach the same conclusion.

The Defendant again seeks a <u>Franks</u> hearing on the validity of the search warrant issued for the March 2002 search of 530 Hegeman Avenue. Defendant argues that testimony presented at trial confirms that 530 Hegeman Avenue was a multiple dwelling apartment building at the time of the search. (<u>See</u> Def.'s Supp. Mem. at 5-10). In support of this position, the Defendant submits copies of two Civilian Complaint Reports made on March 21, 2002 and March 25, 2002, respectively, concerning an incident that occurred at 530 Hegeman Avenue on March 20, 2002. (<u>See</u> Letter from Sally Butler dated January 8, 2006). The complaints were filed by Tieasha Worjloh, who resides at Apartment 2R in the building, and claimed that on the evening of March 20, 2002 police officers forced their way into her apartment to execute an unrelated search warrant. The Defendant asserts that these documents support a finding that "Detective Jenkins knew or should have known the subject location was an apartment building . . . and that [the NYPD] was on actual notice of the nature of the building and its varied and unrelated inhabitants. (<u>Id.</u> at 2-3). I find, however, that the documents do not prove as much. First, the later-dated complaint was filed on March 25, 2002, which was *after* the challenged search warrant was issued and therefore is irrelevant to the question of the NYPD's knowledge of the building's layout when it sought the warrant. The other complaint was filed on March 21, 2002, the day before the warrant issued, and concerned a search that occurred at the location on the twentieth of March, two days prior. As there is nothing in the record that establishes that the knowledge of the officer who performed the March 20th search would have or should have been imparted to Jenkins such that Jenkins would have been on notice concerning any individual apartments at 530 Hegeman in advance of appearing before Justice Rivera to obtain the search warrant, these documents do not change my prior determination regarding the validity of the

March 22, 2002 search warrant.

I continue to find that Jenkins' reliance on the confidential informant was reasonable and that there has been an insufficient showing of intentional or reckless falsehood by the warrant affiant, Jenkins, to require a Franks hearing.  See Franks, 438 U.S. at 171 ("There must be allegations of deliberate falsehood or of reckless disregard for the truth . . . Allegations of negligence or innocent mistake are insufficient. The deliberate falsity or reckless disregard whose impeachment is permitted today is *only* that of the affiant, not of any nongovernmental informant.") (emphasis added).  Moreover, I note that in connection with considering this post-trial motion, I have *again* reviewed the transcript of the search warrant application hearing that took place on March 22, 2003 before Justice Rivera.  Justice Rivera conscientiously questioned both Jenkins and the confidential informant, and there is no support for finding that the issuance of the warrant was improper.

The Defendant's argument that the confidential informant himself should be deemed an affiant and therefore covered by Franks because he testified before Justice Rivera at the probable cause hearing is unconvincing.  (See Def.'s Supp. Mem. at 4-5).  The Defendant has cited no case law to support his argument, and indeed the court has found contrary precedent.  See People v. Grisafi, 192 A.D.2d 147, 149-150 (N.Y. Appell. Div. 1993) (denying request to extend the holding of Franks "to permit a challenge to the veracity of a citizen informant who . . . testified before the Town Justice who issued the search warrant . . . because that would misapprehend the primary justification for the exclusionary rule, which is to deter governmental or police misconduct") (internal citations omitted).

The Defendant also points to specific trial testimony that contradicted the informant's

testimony that 530 Hegeman Avenue was a one-family home to argue that the informant deliberately provided false information to Jenkins for the warrant affidavit. (See Def.'s Supp. Mem. at 5-10). While there are some inconsistencies between the informant's information provided and the evidence presented at trial, once again I find that these inconsistencies do not rise to the level of a substantial preliminary showing of an intentional or reckless disregard for the truth by the warrant affiant as is required under Franks to support a hearing. In addition, the Defendant's claim that the fact that the affidavit supporting the January 2003 federal search warrant was limited to Apartment 2F at 530 Hegeman Avenue has no bearing on the validity of the March 2002 warrant. This fact does not establish that deliberate or reckless false statements were offered to Justice Rivera, but rather suggests only that better intelligence and/or investigation supported the later federal warrant.

For all of the reasons stated above, the Defendant's motion for post-trial relief concerning the admission of evidence obtained from the March 2002 NYPD search of 530 Hegeman Avenue, including the motion for a post-trial Franks hearing on the validity of the March 2002 search warrant, is denied.

(i)     *Execution of the Warrant*

The Defendant also moves for post-trial relief on the grounds that the scope and execution of the warrant were improper. As discussed above, this issue was addressed in my two pre-trial opinions. The Defendant argued in limine that upon commencing the 2002 search the NYPD should have realized that 530 Hegeman Avenue was a multi-apartment dwelling and thus should have confined the search to the Defendant's apartment only. In my 10/20/04 M&O ruling on the issue, I concluded that "[a]bsent a showing that the officers had reason to know that the

house contained separate residences, the search conducted pursuant to the warrant was valid."
(10/20/04 M&O at 13). I also denied Defendant's motion for reconsideration on this issue,
finding that he had "still failed to supply the court with sufficiently detailed and factual
information to justify holding an evidentiary hearing." (2/4/05 M&O at 8).

In the pending motion, the Defendant points to the trial testimony of NYPD Detectives
Mack and Ramos, both of whom took part in the March 29, 2002 search. I find that their
testimony at trial does not provide reason to modify my pre-trial finding that based on the
warrant authorizing the search and the evidence on the record regarding what the officers
encountered when they entered 530 Hegeman Avenue to execute search, the search was valid.
Moreover, there is nothing in the record, including the trial testimony, which suggests that the
officers lacked objective good faith in their execution of the warrant. See United States v. Leon,
468 U.S. 897, 922 (1984) ("We conclude that the marginal or nonexistent benefits produced by
suppressing evidence obtained in objectively reasonable reliance on a subsequently invalidated
search warrant cannot justify the substantial costs of exclusion.").

Of course, law enforcement officials are obligated to restrict searches to the residence of
the suspect when it becomes clear that the search warrant covers multiple apartments. Maryland
v. Garrison, 480 U.S. 79 (1987); United States v. Kyles, 40 F.3d 519, 524 (2d Cir. 1994). I
recognize that the Defendant has submitted an affirmation (which appears not to have been
notarized) dated November 14, 2005, which states that at the time of the search the location in
question contained four separate apartments, a front entry way with four doorbells, separate
mailboxes for each apartment, and door labels (IF, IR, 2F, 2R) on each apartment door.
(See Def.'s Supp. Mem. Ex. F). I am in agreement with the Government that this affirmation by

Defendant is insufficient to challenge the validity of the execution of the warrant given the record before the court.

Prior to oral argument on the post-trial motions, a "new" piece of evidence emerged, which the Defendant argued should inform my ruling pursuant to Maryland v. Garrison that the officers properly executed the search warrant. As noted supra, the Defendant submitted to the court two reports of complaints to the Civilian Complaint Review Board ("CCRB reports") concerning 530 Hegeman Avenue. To rebut the arguments raised by the CCRB reports, the Government submitted a document entitled "Search Warrant Plan Pre-Execution," a New York City Police Department document prepared in advance of executing a search warrant, which lists the personnel who will take part in the search and details of the manner of execution of the search. (See Govt. Resp. dated March 20, 2006, Ex. A). On the second page of this document, there is a diagram of the interior of 530 Hegeman Ave. The diagram indicates a room, kitchen, and "1st. Floor Bedroom," and stairs leading up the second floor. There is a confusing notation on the second floor portion of the diagram to which the Defendant draws the court's attention. It reads "2nd Floor Apt." (reading vertically) with the word "room" written just to the right. Notably, there are also notations on the second floor to two other "rooms," a "living room," and to "2nd Floor, 3rd Room." (See id.).

At oral argument held on May 12, 2006, the Defendant, through counsel, argued that this diagram demonstrated that the officers who conducted the March 29, 2002 search knew that 530 Hegeman Avenue was a multiple dwelling residence with separate apartments. The defense position rests on the confusing notation on the diagram to a "2nd Floor Apt." While it is possible that this notation alone could logically be read to suggest knowledge of a separate apartment on

-13-

the second floor of this building, I am unconvinced when I review the diagram in totality. The most compelling fact persuading me to reject the Defendant's argument is the fact that the diagram makes no other references to separate apartments. The Defendant contends, and indeed there is evidence *now* in the record which arguably tends to show, that there are four apartments at 530 Hegeman. If this were the case, and if the police were indeed aware of it when they prepared to execute the search, would there not be notations reflecting the other three apartments? The lack of such notations is powerful evidence. Looking at the diagram as a whole, which in every other way is consistent with an understanding that 530 Hegeman Ave. was a single family residence, it is reasonable to conclude that use of the word "Apt." does not connote a separate residence on the second floor, but perhaps was used simply to indicate another room in the home. In any event, deciphering exactly what the diagram's artist meant when he/she wrote "apt." is not necessary. This single piece of evidence is of low probative weight, and given all the reasons stated above and in my earlier decisions, I adhere to the conclusion that under Garrison, the execution of the warrant was reasonable. The Defendant's motion challenging the scope and execution of the 2002 warrant is therefore denied.

**IV.    Defendant's Request for Post-Trial Relief Concerning Suppression of Statements Following his January 29, 2003 Arrest**

Pre-Trial Motion

At the pre-trial stage, the Defendant moved in limine to suppress statements made to federal agents following his arrest on January 29, 2003 on the grounds that he was improperly interrogated in violation of the Sixth Amendment because he was represented by counsel at the time in his related state criminal case arising from what Defendant maintains are the same factual

circumstances.[7] After his arrest by federal agents, the Defendant received <u>Miranda</u> warnings and indicated that he wanted to speak with his attorney. Questioning ceased initially, but resumed when the Defendant changed his mind and agreed to speak with the agents without his attorney present. The statements at issue are those he then made to federal agents.

In my 10/20/04 M&O, I considered the validity of the Defendant's waiver of the right to counsel. I held that the Defendant had failed to provide "any factual basis to conclude that his waiver was anything but voluntary" and I denied his motion for a hearing. (<u>See</u> 10/20/04 M&O at 5).

I also considered the Defendant's assertion that the statements should be suppressed because the Defendant had a pending state court criminal case arising from same set of facts and circumstances and for which he had representation, and thus that he could not have validly waived his right to counsel in the absence of his attorney. On this ground, I also denied the Defendant's motion to suppress the statements. (<u>Id.</u> at 6). My decision rested on the fact that the "Sixth Amendment right to counsel is . . . offense specific" and does not attach until a prosecution begins." <u>McNeill v. Wisconsin</u>, 501 U.S. 171, 175 (1991). In <u>Texas v. Cobb</u>, 532 U.S. 162 (2001), the Supreme Court addressed the meaning of "charged offense" in connection with the Sixth Amendment and declared that there is "no constitutional difference between the meaning of the term 'offense' in the contexts of double jeopardy and the right to counsel. <u>Cobb</u>, 532 U.S. at 172-73. Relying on <u>Texas v. Cobb</u>, and established precedent which holds that

---

[7] Following the March 29, 2002 NYPD search of 530 Hegeman Avenue, the Defendant was arrested and charged in New York State Supreme Court, Kings County. He was arrested again by federal agents following the January 29, 2003 search of 530 Hegeman Avenue by DEA agents.

successive prosecutions by separate sovereigns for the same conduct do not implicate the double jeopardy clause, see Heath v. Alabama, 474 U.S. 82, 88-89 (1985), I found that the Defendant's state charge and federal charge were separate offenses for the purposes of the Sixth Amendment right to counsel.  (10/20/04 M&O at 6).  I cited the Fifth Circuit case of United States v. Avants, 278 F.3d 510 (5th Cir. 2002), for the proposition that "'[t]he Supreme Court has incorporated double jeopardy analysis, including the dual sovereignty doctrine, into its Sixth Amendment jurisprudence.'" (10/20/04 M&O at 6 (citing Avants, 278 F.3d at 517)).  This analysis led me to deny the Defendant's suppression motion.[8]

Post-Trial Motion

By letter dated January 8, 2006, the Defendant's counsel drew the court's attention to the Second Circuit case of United States v. Mills, 412 F.3d 325 (2d Cir. 2005), which was decided on June 21, 2005, after the Defendant's conviction.  (See Def.'s Ltr. dated Jan. 8, 2006 ("Def.'s Ltr.")).  In Mills, the Second Circuit considered the application of the double jeopardy dual sovereignty doctrine in the Sixth Amendment right to counsel context.  Based on Mills, the Defendant argues that his Sixth Amendment right to counsel was violated and therefore that he is entitled to a new trial.  The court disagrees.

A brief explication of the facts of Mills is informative.  In that case, the defendant Mills provided statements to law enforcement officials that were procured in violation of his Sixth Amendment right to counsel after being charged on a state gun offense.  Mills, 412 F.3d at 326.  Some months later, Mills was also charged with a federal gun possession offense for the very

_____

[8] The Defendant did not raise the Sixth Amendment issue on his motion for reconsideration.

same conduct. At the federal prosecution, the prosecutors sought to admit the previously

improperly obtained statements. Mills moved to suppress on Sixth Amendment grounds; the

district court granted the suppression motion. Id. On appeal, the government argued that

notwithstanding the identity of the elements underlying the state and federal charges, because the

charges were brought by separate sovereigns, Mill's right to counsel with respect to the federal

charge had not attached. Id. Thus the Second Circuit was faced with the question of the

applicability of the dual sovereignty doctrine in the Sixth Amendment context, and it explicitly

rejected it.

The Second Circuit affirmed the suppression of the statements, holding as follows:

"Under [*Texas v.*] *Cobb*, the Sixth Amendment right of counsel extends to offenses considered to

be the 'same offense' as those to which the right has already attached even when they are

prosecuted by different sovereigns." Id. at 327. The Mills court explained further:

> Nowhere in *Cobb*, either explicitly or by imputation, is there support for a dual
> sovereignty exception to its holding that when the Sixth Amendment right to counsel
> attaches, it extends to offenses not yet charged that would be considered the same offense
> under *Blockburger*.[9]  *Cobb* makes clear that Sixth Amendment violations are offense
> specific and, consequently, evidence obtained in violation of the Sixth Amendment is not
> admissible in subsequent prosecutions for the "same offense" as defined by *Blockburger*.
> The fact that *Cobb* appropriates the *Blockburger* test, applied initially in the double
> jeopardy context, does not demonstrate that *Cobb* incorporates the dual sovereignty
> doctrine: The test is used simply to define identity of offenses. Where, as here, the same
> conduct supports a federal or a state prosecution, a dual sovereignty exception would
> permit one sovereign to question a defendant whose right to counsel had attached, to do
> so in the absence of counsel and then to share the information with the other sovereign
> without fear of suppression. We easily conclude that *Cobb* was intended to prevent such
> a result.

---

9 In Blockburger v. United States, 284 U.S. 299 (1932), the Supreme Court articulated the
test for what constitutes the "same offense" as follows: "the test to be applied to determine
whether there are two offenses or only one is whether each provision requires proof of an
additional fact which the other does not." 284 U.S. at 304.

Id. at 330.  In a footnote, the Mills court explicitly "reject[ed] the government's invitation to follow the Fifth Circuit's lead in United States v. Avants, 278 F.3d 510 (5th Cir. 2002), cert denied, 536 U.S. 968 (2002)."  Id. at 330 n. 2.

In my pre-trial decision, I relied on Avants and adopted the holding of that case, of which the Second Circuit now plainly disapproves.  (See 10/20/04 M&O at 6).  With the new precedent of Mills, the Defendant maintains that his January 29, 2003 statements should have been suppressed and that he is therefore entitled to a new trial.  (See Def.'s Ltr., at 2-3).  The Government responds that the Defendant's Sixth Amendment right to counsel did not attach at the time he was questioned by federal agents in January 2003, and that Mills is inapplicable to the present case.  (See Govt. Resp. Ltr. dated March 20, 2006 ("Govt. Resp. Ltr."), at 4-6).

The Government first argues that the Defendant's federal arrest in January 2003 and his March 2002 arrest on state charges did not arise out of the "same facts and circumstances" and are not "identical charges, prosecuted in separate jurisdictions," as the Defendant characterizes them.  (Govt. Resp. Ltr., at 4).[10]  Rather, the Government correctly emphasizes that the Defendant's two arrests arose from distinct searches by law enforcement officials, each

---

[10] It is important to make clear the overlap and distinction between Worjloh's state and federal charges.  Indictment No. 2087/2002, in the Supreme Court Kings County, charged Worjloh with committing the following crimes *on or about March 29, 2002:* two counts of Criminal Possession of a Controlled Substance in the Third Degree; Possession of a Weapon in the Third Degree; Criminal Possession of a Weapon in the Fourth Degree; Criminal Possession of a Controlled Substance in the Seventh Degree; and Criminally Using Drug Paraphernalia in the Second Degree. The Federal Complaint filed in the Eastern District of New York on January 31, 2003 charged Worjloh with Possessing with Intent to Distribute Cocaine Base *on or about January 29, 2003* in violation of 21 U.S.C. § 841(a)(1).  Ultimately, the Superseding Indictment against Worjloh charged the following: Conspiracy to Distribute Cocain Base between January 1999 and January 29, 2003; Possession of Cocaine Base on or about March 29, 2002; and Unlawful Use of a Firearm in relation to a drug trafficking crime between March 29, 2002 and January 29, 2003.

-18-

uncovering different contraband, and each leading to different criminal charges. Specifically, the New York state arrest and prosecution stemmed from the NYPD's March 29, 2002 search, at which time the NYPD seized 165 ziplock bags of cocaine and two .9 millimeter guns (one from the Defendant's home and a second from the Defendant's vehicle). (See State Criminal Complaint, attached as Ex. B to Def.'s Ltr.; State Indictment, attached as Ex. C to Def.'s Ltr.). In contrast, the later federal arrest stemmed from the DEA's January 29, 2003 search of the same location, which led to the seizure of 18 additional ziplock bags of cocaine and marijuana and a .22 caliber handgun and silencer. (See Federal Complaint, attached as Ex. D to Def.'s Ltr.).

In Blockburger, the Supreme Court articulated the following rule: "[W]here the *same act or transaction* constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not." Blockburger, 284 U.S. at 304 (emphasis added). Because the Defendant's two arrests and subsequent prosecutions arose from two distinct searches and seizures, which occurred some ten months apart and produced wholly different evidence – albeit from the same location – the Government argues that application of the Blockburger test is unwarranted because the conduct at issue does not even constitute the "same act or transaction," which is the threshold requirement under Blockburger. Compare Mills, 412 F.3d at 327-28 (defendant charged in state and federal prosecutions with possession of the same firearm on the same date). Additionally, the Government urges that, to the extent this court finds that the Defendant's criminal conduct in March 2002 and January 2003 were "the same act or transaction," the Sixth Amendment right to counsel is nonetheless not implicated under the Blockburger test. (Govt. Resp. Ltr., at 4). This argument is based on the fact that in the Federal

prosecution, the Defendant was charged with conspiracy to possess with intent to distribute crack cocaine, whereas in the state case, the Defendant was not charged with conspiracy but only with substantive possession counts.  Thus, the Government contends that Blockburger is not satisfied because conspiracy to possess and substantive possession are distinct crimes, each requiring "proof of an additional fact which the other does not."  (Id.).

Next, the Government argues that the Defendant's reliance on the Second Circuit's recent decision in Mills is "misplaced" because Mills is distinguishable from this case both on its facts and its reasoning.  (Govt. Resp. Ltr., at 4; see also Transcript of Oral Argument dated May 12, 2006).  I am persuaded by this argument.  On the facts, Mills is distinguishable in that, there, the defendant was questioned after his first arrest in violation of his Sixth Amendment rights, and those improperly obtained statements were then sought to be used against him in the subsequent federal prosecution alleging the very same conduct.  Here, the questioning of Worjloh after his first arrest by the State was permissible.  Worjloh argues that the second instance of questioning after the federal arrest was violative of the Sixth Amendment in light of his earlier arrest and representation.  This case, therefore, presents a different factual scenario than the Mills case, and it can reasonably be argued that the Mills decision turned on the specific chronology of events which is not present in the instant case.  The Court of Appeals stated in Mills: "Cobb makes clear that Sixth Amendment violations are offense specific and, consequently, evidence obtained in violation of the Sixth Amendment is not admissible in *subsequent* prosecutions for the 'same offense' as defined by Blockburger."   412 F. 3d at 330 (emphasis added).  This statement suggests that Mills should be limited to its facts.

Regardless of whether the technical holding of <u>Mills</u> may or may not apply in this case,[11] I am convinced that the *reasoning* which underlies the <u>Mills</u> holding does not support its application here. Although the <u>Mills</u> decision is short and does not include extensive explanation, it is plain that the decision rests on concerns of improper collusion between state and federal law enforcement officials and prosecutors that could jeopardize a criminal defendant's constitutionally protected rights. <u>Id.</u> ("[A] dual sovereignty exception [in the Sixth Amendment context] would permit one sovereign to question a defendant whose right to counsel had attached, to do so in the absence of counsel and then to share the information with the other sovereign without fear of suppression."); <u>see also</u> <u>United States v. Coker</u>, 433 F.3d 39, 51 (1st Cir. 2005) (J. Cyr, concurring) (disagreeing with panel's alternative holding that there was no Sixth Amendment violation under <u>Cobb</u> noting that "the rationale advocated by the co-concurrence would render Sixth Amendment protections essentially meaningless, subject to the most blatant and irremediable manipulation."); David J. D'Addio, Comment, *Dual Sovereignty and the Sixth Amendment Right to Counsel*, 113 Yale L.J.1991, 1992 (2004) (arguing that dual sovereignty principles should not be imported into Sixth Amendment jurisprudence, because to do so "creat[es] the potential for cooperating sovereigns to circumvent a defendant's Sixth Amendment right to counsel").

<u>Mills</u> addresses the problem of one sovereign impermissibly obtaining statements from a defendant, and, because those statements could not be used in that sovereign's prosecution, passing them along to another sovereign that then prosecutes the defendant for the "same

---

[11] By "technical holding," I mean whether some or all of the charges brought against Worjloh in the federal indictment are the "same offenses" as the state charges brought against him under <u>Blockburger</u> and <u>Mills</u>.

offense" in the second sovereign. The <u>Mills</u> court was concerned with prosecutors being sneaky to avoid suppression. This is hardly the situation that occurred with Worjloh. In Worjloh's case, the State conducted a search of his home, seized a large quantity of drugs and weapons, arrested him, and permissibly questioned him in compliance with his constitutional rights. Ten months later, Federal agents, on their own, conducted a search of the same residence, seized an entirely new quantity of drugs and weapons, arrested the Defendant, and again *permissibly* questioned him about the search and seizure that occurred that day. There is no evidence of impermissible collusion between the state and federal officials. That charges encompassing and arising from both searches ultimately were brought in the federal prosecution does not suggest that the state and the Federal Government in any way conspired to undermine Worjloh's constitutional rights. Rather, the federal indictment merely reflects that there was evidence to support charges of an illegal conspiracy that covered more than the ten month period between these two searches.

Thus, I find that <u>Mills</u> does not require suppression of the Defendant's January 29, 2003 statements as those statements were not procured in violation of the Defendant's Sixth Amendment right to counsel. Worjloh's motion is therefore denied.

## V.       Defendant's <u>Pro</u> <u>Se</u> Motion Alleging Constructive Amendment of the Indictment

In the Defendant's post-trial submission filed <u>pro se</u> on June 7, 2005, the Defendant argues that the court constructively amended the indictment when it instructed the jury on aiding and abetting liability. This argument is without merit. The Superseding Indictment against the Defendant explicitly charges aiding and abetting with citation to 18 U.S.C. § 2 in connection with Counts Two and Three. See 18 U.S.C. § 2(a) ("Whoever commits an offense against the

United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.").  Moreover, even if the Government had not expressly charged 18 U.S.C. § 2, the aiding and abetting instruction would nonetheless have been proper under established Second Circuit law.  United States v. Mucciante, 21 F.3d 1228, 1234 (2d Cir. 1994) ("[T]he inclusion of an aiding and abetting charge to the jury will rarely, if ever, constructively amend an indictment because an aiding and abetting charge is arguably implicit in every indictment. . .  Accordingly, it is well established that a trial judge may properly give an aiding and abetting instruction even if the indictment does not expressly charge a violation of 18 U.S.C. § 2.") (internal citations omitted).

The Defendant's motion for a new trial alleging constructive amendment of the indictment is denied.

## VI.    Conclusion

For the aforementioned reasons, the Defendant's post-trial motion for a Franks hearing on the validity of the March 2002 search warrant is DENIED.  The Defendant's request for a new trial based on the non-suppression of statements claimed to have been obtained in violation of the Sixth Amendment is DENIED.  The Defendant's motion seeking a new trial based on constructive amendment of the indictment is DENIED.  The Defendant is scheduled to be sentenced before this court at 9:30 a.m. on Tuesday, June 20, 2006.

SO ORDERED.

Dated: June 12, 2006                                          _____/s/_____
        Brooklyn, NY                                     Nicholas G. Garaufis
                                                         United States District Judge